THE STATE, EX REL. FOSTORIA DAILY REVIEW COMPANY, *v.*
FOSTORIA HOSPITAL ASSOCIATION.

[Cite as State, ex rel. Fostoria Daily Review Co., *v.* Fostoria Hosp. Assn. (1989),
44 Ohio St. 3d 111.]

(No. 87-2055—Submitted April 25, 1989—Decided July 19, 1989.)

*Baker & Hostetler* and *David L. Marburger,* for relator.

*Shumaker, Loop & Kendrick, Timothy C. McCarthy* and *Robert A. Koenig,* for respondents.

*Per Curiam.* Under R.C. 149.43 (B), "[a]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * *" According to R.C. 149.43(A)(1), a "public record" is any record that is kept by any public office except, among other things, "* * * records, the release of which is prohibited by state or federal law." FHA argues that the disputed records are not subject to disclosure under R.C. 2305.251. This section states:

"Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review by such committee. * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of such committee * * *."

Among the review committees described in R.C. 2305.25 are a hospital's quality assurance committee and a hospital board or committee reviewing professional qualifications or activities of its medical staff or applications for admission thereto. FHA maintains that all minutes of its Joint Advisory and Quality Assurance Committee and the contested passages from the board of trustees' minutes are not subject to disclosure because the committee monitors quality

assurance efforts and the board of trustees reviews these activities and the qualifications and activities of its medical staff.

The General Assembly did not define a "quality assurance committee" in R.C. 2305.25. We find assistance, however, from two other sources. The Social Security Act permits the creation of a utilization and quality control peer review organization to review hospital utilization and quality control in a geographic area. Section 1320c-2, Title 42, U.S. Code. The peer review organization determines, *inter alia,* whether the services provided by the hospitals within the organization's jurisdiction are reasonable and medically necessary and whether the quality of such services meets professionally recognized standards of care. Section 1320c-3, Title 42, U.S. Code.

The Joint Commission on Accreditation of Hospitals ("JCAH"), moreover, has adopted standards for quality assurance. The JCAH is a nonprofit commission governed by commissioners selected from the national physicians', surgeons', dentists', and hospital administrators' associations, and from the American Medical Association. It establishes standards for operating hospitals and accredits them according to the standards. Jost, The Joint Commission on Accreditation of Hospitals: Private Regulation of Health Care and the Public Interest (1983), 24 B.C.L. Rev. 835. Furthermore, in Ohio, a hospital must be certified under the Social Security Act, by the JCAH, or by the American Osteopathic Association, R.C. 3727.02 and Ohio Adm. Code 3701-59-03(A). Thus, the General Assembly, in R.C. 2305.25, appears to have referred to those quality assurance committees established by individual hospitals to comply with either the Social Security Act or the JCAH.

In the instant case, however, the Joint Advisory and Quality Assurance Committee (hereinafter "committee") is not the quality assurance committee mentioned in R.C. 2305.25. Analysis of this committee's minutes discloses that it received reports from a subsidiary quality assurance committee and did not undertake any initial quality assurance reviews. The bulk of the committee's minutes deals with topics other than quality assurance. The quality assurance items recorded are actually notations that reports of a quality assurance committee were received and what actions the committee took in response. Even though the committee was responsible for quality assurance, it was not the quality assurance committee. The committee's proceedings and records are not confidential 'and are, thus, subject to disclosure. Furthermore, references to its activities in the board of trustees' minutes are also subject to disclosure.

R.C. 2305.25 and 2305.251 also render confidential the proceedings and records of a "hospital board or committee reviewing professional qualifications or activities of its medical staff or applicants for admission to its medical staff[.]" We have identified several passages in the minutes of the board of trustees and the Joint Advisory and Quality Assurance Committee that are confidential under this provision. Generally, the passages discuss qualifications of the medical staff and incidents between members of the medical staff. Therefore, the bracketed excerpts in the sealed documents at the following pages of the supplemental papers are redacted: p. 7, first bracket on p. 8, pp. 10, 22, 26, and 34. Furthermore, the following excerpts from the minutes of the Joint Advisory and Quality Assurance Committee are redacted: item 1 under old business at p. 57, item 1 under new business at p. 58, item 1

under old business at p. 60, p. 64, item 1a.(1) under Quality Assurance/Risk Management at pp. 76-77. Moreover, the passages that are claimed confidential under the attorney-client privilege, and which relator does not seek, are redacted (pp. 25, 42, 55, and 56). However, the bracketed excerpt at p. 41, claimed exempt as trial preparation, does not relate to trial preparation, but to possible disciplinary action to be taken against an employee. It is, along with the remainder of the minutes of the Joint Advisory and Quality Assurance Committee and of the board of trustees, hereby ordered disclosed.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur separately.

HOLMES, J., dissents in part and concurs in part.

WRIGHT, J., not participating.

DOUGLAS, J., concurring. R.C. 2305.251 is not a blanket immunity-from-disclosure statute. The Joint Advisory and Quality Assurance Committee of FHA is *not* a quality assurance committee as contemplated by R.C. 2305.25.

Finally, it should be noted, that while the citations in the majority opinion to the Social Security Act and the JCAH are pertinent, this hospital, as a public institution, is also subject to R.C. 149.43(B)—the Ohio *public* records law.

SWEENEY, J., concurs in the foregoing concurring opinion.

HOLMES, J., dissenting in part and concurring in part. I concur in the redaction of those portions of the minutes of the board of trustees and the Joint Advisory and Quality Assurance Committee ("JAQAC") which concern the qualifications of the medical staff and incidents between members of the medical staff, pursuant to R.C. 2305.25 and 2305.251. I also concur in the disclosure of the remaining portions of the minutes of the board of trustees, since the board is clearly not a quality assurance committee within the ambit of R.C. 2305.251.

However, I would grant respondent's request for nondisclosure of those portions of the minutes of the JAQAC dealing with quality assurance within respondent's hospital. The JAQAC is ultimately responsible for quality assurance within the hospital, as set forth in Section 3.14(c)(iv)(4) of Article III of the Fostoria Hospital Association's Code of Regulations:

"The Joint Advisory and Quality Assurance Committee shall be responsible for [the] overall hospital quality assurance program and for reviewing the effectiveness of the hospital's Quality Assurance Policy."

This is entirely in keeping with the Medicare regulations alluded to by the majority:

"The [hospital] governing body must ensure that there is an effective, *hospital-wide* quality assurance program to evaluate the provision of patient care. * * *" (Emphasis added.) Section 482.21, Title 42, C.F.R.

Nothing within the federal regulations, the JAQAC standards for quality assurance, or R.C. 2305.25 prevents a hospital from establishing a two-tiered quality assurance program, as here, where the ultimate responsibility rests with an oversight committee, while the actual evaluations of patient care are conducted by one or more subcommittees. Such a two-tiered system,

particularly in a large hospital such as respondent's, is often a most effective management practice.

Moreover, the fact that the proceedings of the quality assurance committee are conducted at one level, while records of such proceedings are reviewed at another, is immaterial. R.C. 2305.251 provides that "*[p]roceedings and records* of all review committees described in section 2305.25 of the Revised Code *shall be* *held in confidence * * *.*" (Emphasis added.) Even though certain aspects of the quality assurance process are handled at another level, the JAQAC is a quality assurance committee within the purview of R.C. 2305.25, and its records are made confidential by operation of R.C. 2305.251. These records are thus not subject to disclosure under R.C. 149.43.

Accordingly, I must in this respect dissent.