OPINION
{¶ 1} Larry R. Akers, plaintiff-appellant, appeals from a judgment of the Ohio Court of Claims, in which it found in favor of the Ohio State University Medical Center ("OSUMC"), defendant-appellee, with regard to appellant's medical malpractice claim.
 {¶ 2} On February 5, 2001, appellant was admitted to OSUMC for a kidney transplant operation, which he underwent successfully the next day. Appellant was discharged from OSUMC on the evening of February 13, 2001. That night, appellant began feeling ill and was readmitted to OSUMC the next morning. Appellant was diagnosed with Legionnaires' disease and spent another 13 days in the hospital. Legionnaires' disease is a lower respiratory tract infection caused by the bacteria legionella pneumophila. The usual manner of contracting Legionnaires' disease is through exposure to contaminated air or water. The presence of legionella bacteria is common in water supplies everywhere, including OSUMC's water supply. For a healthy person, the risk of contracting the disease is very low. Transplant patients, however, have a higher risk of contracting infectious diseases such as Legionnaires because their immune systems are suppressed. Accordingly, OSUMC has implemented policies and procedures in its transplant units to prevent the spread of infectious diseases such as Legionnaires' disease. These polices include allowing patients to drink only bottled water and requiring nurses to run the water in a shower for ten minutes to flush out the showerhead before allowing a patient to shower. The hospital also tests the water in the transplant units every quarter for the presence of legionella bacteria.
 {¶ 3} On January 29, 2002, appellant filed a complaint against OSUMC sounding in medical malpractice. Appellant alleged that the showerhead in his room was infected with the legionella bacteria and that a nurse negligently violated OSUMC protocol when she allowed him to take a shower without first flushing the showerhead. Subsequently, appellant served requests for production of documents and interrogatories upon OSUMC, to which OSUMC responded by asserting certain information and documentation generated in connection with OSUMC's Infection Control Committee ("ICC") and the Department of Epidemiology was privileged pursuant to R.C. 2305.24,2305.25, and former R.C. 2305.251 (sometimes hereafter referred to as the "quality assurance privilege"). Specifically, OSUMC asserted this statutory privilege in response to appellant's requests for the following: (1) all investigations, analyses and studies conducted by OSUMC since January 1, 1995, relating in any way to legionella; (2) information regarding former patients that may have acquired Legionnaires' disease while at the hospital since 1995; (3) testing for Legionnaires' disease since 1995 and the results of those tests; and (4) any remedial measures OSUMC took in response to Legionnaires' disease.
 {¶ 4} On August 16, 2002, appellant filed motions to compel and for an in camera inspection of all documents OSUMC claimed were privileged. OSUMC responded to these motions with the affidavit of Dr. Julie Mangino, who is the Medical Director of OSUMC's Department of Epidemiology, Division of Infectious Diseases. She averred that the Department of Epidemiology is a member of the hospital's ICC, which is a quality assurance committee. Dr. Mangino explained that the Department of Epidemiology regularly tests for the legionella bacteria, pursuant to a preventative maintenance plan approved by the ICC, and the results of those tests are reviewed by the department's employees and made available solely to the ICC with the goal of improving the hospital's procedures concerning the quality of patient care. Accordingly, OSUMC maintained that, because certain documentation and information requested by appellant was produced for and submitted to a quality assurance committee, it was privileged pursuant to R.C. 2305.24, 2305.25, and former R.C. 2305.251.
 {¶ 5} On August 21, 2002, appellant filed a notice of deposition, pursuant to Civ. R. 30(B)(5), requesting that OSUMC designate a person who could testify concerning 13 specific issues. On September 3, 2002, OSUMC sought a protective order from the trial court, pursuant to Civ. R. 26(C), again claiming that much of the information appellant sought in the deposition was privileged. On September 6, 2002, the trial court denied appellant's motions to compel and for an in camera inspection, and granted OSUMC's motion for a protective order.
 {¶ 6} A liability only trial was held on September 8-10, 2003. On April 29, 2004, the trial court entered judgment in favor of OSUMC, finding that appellant failed to prove by a preponderance of the evidence that OSUMC acted negligently. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 FIRST ASSIGNMENT OF ERROR
The Court of Claims erred to the substantial prejudice of Plaintiff-Appellant Larry Akers, as a matter of law, by sustaining Defendant-Appellee Ohio State University Medical Center's motion for an overly broad protective order, and by failing to first perform an in camera inspection of the documents claimed to be subject to a peer review privilege.
 SECOND ASSIGNMENT OF ERROR
The Court of Claims erred to the substantial prejudice of Plaintiff-Appellant Larry Akers, as a matter of law, by failing to sustain Plaintiff's motion for a mistrial, after the surprise testimony of a witness regarding laboratory culture tests performed after the report of Plaintiff's illness, which results were previously undiscoverable due to the Court's protective order.
 {¶ 7} Appellant argues in his first assignment of error that the trial court erred by granting an overly broad protective order and by failing to conduct an in camera review of the documents that OSUMC contended were privileged. A trial court enjoys considerable discretion in the regulation of discovery matters. Manofsky v. Goodyear Tire Rubber Co. (1990),69 Ohio App.3d 663, 668, citing State ex rel. Daggett v. Gessaman
(1973), 34 Ohio St.2d 55, 63. The decision whether to grant or deny a protective order is within the trial court's discretion and will not be reversed absent an abuse of that discretion. Ruwe v. Bd. of SpringfieldTwp. Trustees (1987), 29 Ohio St.3d 59, 61; Cargotec, Inc. v. WestchesterFire Ins. Co., 155 Ohio App.3d 653, 2003-Ohio-7257, at ¶ 9. Likewise, whether or not to conduct an in camera inspection is within the trial court's discretion. Oriana House, Inc. v. Montgomery, Franklin App. No. 03AP-1178, 2004-Ohio-4788, at ¶ 38. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152.
 {¶ 8} OSUMC contends that the trial court did not abuse its discretion when it granted a protective order without an in camera review based upon the quality assurance privilege. R.C. 2305.24 and former R.C. 2305.251, which was in effect at the time the trial court ruled on the discovery dispute at issue here, provided broad confidentiality protection for information and documents provided to certain hospital committees charged with quality review. Former R.C. 2305.251 stated, in relevant part:
Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, a hospital * * * arising out of matters that are the subject of evaluation and review by the committee. * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within the person's knowledge[.] * * *
One of the committees described in R.C. 2305.25 is a "quality assurance" committee, which would include OSUMC's ICC in the present case.
 {¶ 9} R.C. 2305.24 also provides confidentiality protection for any information or documents made available to a hospital quality assurance committee and regulates the use of such information by the committee and its members. The version of R.C. 2305.24 that was in effect during the relevant time states, in pertinent part:
Any information, data, reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * shall be confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee. * * *
 {¶ 10} In construing former R.C. 2305.251, this court found in Gatesv. Brewer (1981), 2 Ohio App.3d 347, that it is the duty and obligation of the trial court to conduct an in camera inspection of any documents claimed to be privileged, stating:
It should be noted that the language of R.C. 2305.251 limits its application to specific types of evidence and testimony. When a trial court is presented with a situation in which an individual attempts to avoid testimony or a party attempts to prevent the introduction of certain evidence by asserting the privilege defined in R.C. 2305.251, itis incumbent upon the trial court to hold an in camera inspection of the information, documents or records in question and to question the witness as to the nature of his testimony. By virtue of the in camera inspection and the questioning of the witness, the trial court then can make an informed decision as to the admissibility of the evidence and testimony in relation to R.C. 2305.251.
(Emphasis added; emphasis sic.) Gates, at 351. Thus, in Gates we found it "incumbent" upon the trial court to hold an in camera inspection of the information, documents, and records at issue.
 {¶ 11} Likewise, in Doe v. Mt. Carmel Health Sys., Franklin App. No. 03AP-413, 2004-Ohio-1407, this court recognized that the extensive privilege accorded to hospital committee proceedings and records by R.C. 2305.251 is tempered by exceptions, including the original sources exception, which is a "major exception." Id., at ¶ 10, citing State exrel. Grandview Hosp. Medical Ctr. v. Gorman (1990), 51 Ohio St.3d 94,96. We concluded that "[t]he most appropriate way to determine if the privilege applied and to what documents it applied, was to conduct an in camera inspection." Doe, at ¶ 13. In concluding such, we noted the citation in Gorman to Henneman v. Toledo (1988), 35 Ohio St.3d 241, 243, in which the Ohio Supreme Court stated:
In camera inspection of the documents by the trial judge is the most appropriate method of dealing with claims of executive privilege. * * * By conducting such an inspection in chambers away from the jury and without the presence or participation of counsel for either party, the trial judge may make the necessary determination without compromising the confidentiality of any information he finds to be privileged.
Accordingly, it is apparent from Gates and Doe that this court views the quality assurance privilege as limited and favors an in camera inspection to determine its applicability to the particular documents and information at issue.
 {¶ 12} Courts in other appellate districts have agreed that, because the privilege provided in R.C. 2305.24, 2305.25, and R.C. 2305.251 is limited and does not provide blanket immunity, an in camera inspection is necessary to make an informed decision regarding the extent to which the privilege should be applied. In Trangle v. Rojas, 150 Ohio App.3d 549,2002-Ohio-6510, at ¶ 35, the Eighth District Court of Appeals, relying upon this court's decision in Gates, found that, where a party seeks to prevent the introduction of evidence by asserting the privilege in R.C. 2305.251, a trial court should conduct an in camera inspection to determine which information, documents, or records are discoverable and which are privileged. The court in Trangle concluded that the trial court's failure to conduct such an in camera inspection constituted an abuse of discretion. Id. See, also, Johnson ex rel. Estate of Johnson v.Univ. Hosp. of Cleveland (Mar. 28, 2002), Cuyahoga App. No. 80117 (the trial court erred by compelling the disclosure of the incident reports in toto without conducting an in camera inspection of the records).
 {¶ 13} The Seventh District Court of Appeals has also recognized the necessity of an in camera inspection, citing our decision in Gates. InWilson v. Barnesville Hosp., 151 Ohio App.3d 55, 2002-Ohio-5186, the court stated:
In a more recent decision, the Eighth District found that "[a]pplying the privileges set forth in R.C. 2305.24, 2305.25 and R.C. 2305.251 to actual documents is a difficult task. See In re Grandview Hospital
(1990), 51 Ohio St.3d 94, 96 * * *. An in camera inspection allows the trial court to make an informed decision as to the admissibility of the evidence in relation to these statutory privileges. See Gates at 351 [2 OBR 392], 442 N.E.2d 72." Johnson ex rel. Estate of Johnson v. Univ.Hosp. of Cleveland, (Mar. 28, 2002), 8th Dist. No. 80117, 2002 WL 472298.
* * *
The Eighth District's remand [in Johnson] for an in camera inspection is yet another indication of the statute's intended scope. If the peer review statute was truly unlimited in scope, as the hospital avers, there would be absolutely no basis for the requisite in camera inspection, as the entire file would be privileged irrespective of its contents.
Id., at ¶ 17, 19. (Emphasis added.) Its use of the word "requisite" reveals that the Seventh District Court of Appeals believes an in camera inspection is mandatory.
 {¶ 14} In Yancey v. Woodson (Dec. 15, 1989), Lucas App. No. L-88-231, the Sixth District Court of Appeals cited Gates in finding that the trial court's failure to conduct an in camera inspection of certain documents claimed to be privileged under R.C. 2305.251 was unreasonable, unconscionable, and constituted an abuse of discretion. In remanding the matter to the trial court for an in camera inspection, the court inYancey noted:
Although the Supreme Court of Ohio has not adopted the test set forth in Gates, supra, it appears that the high court favors an inspection of the purported privileged evidence prior to any decision wholly denying public disclosure. State ex rel. Fostoria Daily Review Co. v. FostoriaHosp. Assn. (1988), 44 Ohio St.3d 111. From that decision it can be inferred that the Supreme Court of Ohio does not consider R.C. 2305.251
to provide blanket immunity from disclosure and that the determination of what can or cannot be disclosed hinges upon the nature of the hospital committee claiming privilege and the source and type of information which the complaining party seeks to discover. Id.
This court has also impliedly held that a lower court cannot totally bar discovery on a flat claim of privilege. Atkins v. Walker (1979),65 Ohio App.2d 136, 140[.] * * *
 {¶ 15} In Kalb v. Morehead (May 19, 1998), Scioto App. No. 97CA2499, the Fourth District Court of Appeals addressed whether the trial court wrongfully issued a protective order prohibiting the plaintiffs from obtaining documents and information regarding the defendant doctor's credibility and the defendant hospital's negligent credentialing based upon the privilege set forth in R.C. 2305.251. The appellate court found that "[w]ithout inspecting [the defendant's] personnel file, it was impossible for the trial court to determine if the R.C. 2305.251
privilege applied to the entire file. Thus, the trial court abused its discretion by issuing a protective order on the basis of R.C. 2505.251 without inspecting the file." Relying upon Gorman and Gates, the appellate court then found "the trial court had the authority and the duty to [inspect] the documents."
 {¶ 16} Therefore, based upon Gates, Doe, and the cases from other appellate districts that are in accord, we find the trial court in the present case abused its discretion by granting the broad protective order without conducting an in camera inspection of the information claimed to be subject to the privilege. The most reasonable method of assuring that only evidence and information that is specifically covered by the privilege contained in R.C. 2305.251 is barred from discovery is to hold an in camera inspection. It is easily conceivable that discoverable, non-privileged evidence could otherwise be lost in a broad claim of privilege.
 {¶ 17} We also note that the key information in question in this case concerns not that which was discovered pursuant to routine testing as part of an overall quality assurance program, which is the type about which Dr. Mangino averred, but that which was discovered based upon an individual inspection of appellant's showerhead in specific response to OSUMC's learning of appellant's illness. The purpose of R.C. 2305.251 is not to hinder lawsuits, but to provide confidentiality to the proceedings of the review committee based upon the information gathered. See Browningv. Burt (1993), 66 Ohio St.3d 544, 562 (addressing R.C. 2305.25). If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee. See Wilson, at 61. This is certainly not the purpose of the privilege in R.C. 2305.251. For the above reasons, we find the trial court erred in failing to conduct an in camera inspection before denying the motion to compel and granting the protective order. Appellant's first assignment of error is sustained.
 {¶ 18} In his second assignment of error, appellant contends the trial court abused its discretion when it denied his motion for a mistrial. Appellant moved for a mistrial when OSUMC's witness, Dr. Mangino, testified that the showerhead in appellant's room had been tested and the laboratory results were negative for the presence of legionella. Appellant argues that, because OSUMC asserted privilege as to this information throughout the pendency of the case, and the trial court had deemed this evidence undiscoverable and subject to a protective order, he was unfairly surprised at trial by the testimony. Appellant claims surprise because his case was premised upon the fact that the showerhead was the source of the legionella, which he based upon the information he had that suggested the showerhead had not been tested.
 {¶ 19} As we sustained appellant's first assignment of error and must remand the matter for an in camera inspection, appellant's argument with regard to a new trial is moot. However, we find an in camera inspection with regard to the report entitled "The Ohio State University Hospital Medical Center Epidemiology Department Legionella Culture Results" ("legionella laboratory report"), which contained the laboratory results for the showerhead culture, is not necessary. Applying the general rules of waiver of an asserted privilege, we find OSUMC waived any privilege that may have existed with respect to this particular document. Specifically, this court has held with regard to the attorney-client privilege, "`if the holder of the privilege fails to claim his privilege by objecting to disclosure by himself or another witness when he has an opportunity to do so, he waives his privilege as to the communications so disclosed.'" Sanderson Farms, Inc. v. Gasbarro, Franklin App. No. 01AP-461, 2004-Ohio-1460, at ¶ 19, quoting 1 McCormick, Evidence (5 Ed.Strong Ed. 1999) 374, Section 93.
 {¶ 20} In the present case, OSUMC failed to object to Dr. Mangino's testimony that the showerhead in appellant's room had been cultured for legionella. OSUMC also later failed to object to Dr. Mangino's testimony that the showerhead culture was found to be negative and that there existed a report from the laboratory indicating that the results for the showerhead were negative. Further, OSUMC's counsel claimed at trial:
MR. TULLIS: Our position has been all along that the report is privileged. * * * [W]e've made that argument from the beginning. We had no intention of using that document in this case.
* * *
MR. TULLIS: She answered the question in response to you. We didn't do it.
However, OSUMC cannot continue to assert privilege during discovery as to certain documents and testimony but then permit such to be divulged at trial without objection. OSUMC's argument at trial that, in essence, it was appellant's fault that the information was revealed because appellant's counsel asked Dr. Mangino the question is also untenable. Thus, we find the failure of OSUMC to object and to assert privilege at trial constituted a waiver of any privilege with regard to the legionella laboratory report, at a minimum.
 {¶ 21} Upon remand, the trial court must hold an in camera inspection with regard to the documents claimed to be privileged, except for the legionella laboratory report, and determine whether they should have, in fact, been subject to the privilege in R.C. 2305.251. If certain relevant documents are not subject to the asserted privilege, pursuant to R.C. 2305.251, then a new trial is appropriate. If the court finds that the privilege does apply to some or all of the relevant documents, then it must still determine to what extent, if any, the waiver of privilege we have found applicable to the legionella laboratory report applies to the remaining documents. Based upon this finding, the trial court must determine whether a new trial is appropriate.
 {¶ 22} Accordingly, appellant's first assignment of error is sustained, and appellant's second assignment of error is moot. The judgment of the Ohio Court of Claims is reversed, and this matter is remanded to that court for an in camera inspection of the evidence OSUMC claimed to be privileged, except for the legionella laboratory report, to which we have found any existing privilege was waived, and other proceedings consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT J., concurs.
KLATT, J., dissents.