OPINION
{¶ 1} Plaintiff-appellant, Michael L. Callander ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Ronald A. Callander, Sr., Callander and Sons, Inc., and Callander Management, LLC (collectively "appellees"), and denying as moot appellant's motion to compel discovery, motion for reconsideration, and cross-motion for summary judgment.
 {¶ 2} The complaint herein stems from various alleged agreements made between appellant and his father Ronald A. Callander, Sr. ("Ron Sr."), regarding Ron Sr.'s *Page 2 
businesses, Callander and Sons, Inc. and Callander Management LLC (hereafter "Callander Cleaners" or "the business").
 {¶ 3} Upon leaving high school in 1976, appellant began working at Callander Cleaners and remained there until the spring of 1986. After leaving Callander Cleaners, appellant attempted to start his own dry cleaning business, worked as a security officer for City Hall, and did consulting for dry cleaning businesses out of state. Appellant returned to Callander Cleaners in May of 1990, and his employment was terminated in February of 1991. Thereafter, appellant was employed by various employers until he returned to Callander Cleaners in February of 1998.
 {¶ 4} During the fall of 1999, Callander Cleaners started a new sector of its dry cleaning business involving services to grocery store customers entitled "Dress for Success." Appellant worked in the new sector until he developed medical conditions in 2002 and 2003, which caused him to stop working. Appellant's paychecks from Callander Cleaners were discontinued in March of 2004.
 {¶ 5} Essentially, appellant alleges Ron Sr. made two separate promises to him that form the basis of his complaint. The first concerns transferring a portion of ownership in the business to appellant. According to appellant, upon his return to Callander Cleaners in 1998 and 1999, he and his father had several discussions regarding the future of Callander Cleaners. Appellant asserts Ron Sr. told him that if appellant stayed and proved himself, and did not pursue other business opportunities, Ron Sr. would convey ownership of the business to appellant and his siblings as equal partners. Despite appellant staying in the business, appellant contends his father repudiated this agreement by failing to transfer ownership. *Page 3 
 {¶ 6} The second promise Ron Sr. is alleged to have made concerns a claim for workers' compensation benefits. According to appellant, he was injured in the scope of his employment in 2002 and 2003. Appellant contends Ron Sr. asked him not to file a workers' compensation claim and in exchange Ron Sr. would continue to pay appellant's wages and benefits. Appellant stopped receiving paychecks in March 2004, and thereafter, he filed a claim for workers' compensation benefits.
 {¶ 7} On October 28, 2005, appellant filed this complaint alleging four causes of action, to wit: (1) wrongful discharge and breach of contract; (2) promissory and equitable estoppel; (3) unjust enrichment; and (4) declaratory judgment and accounting. All counts of the complaint stem from the above-described agreements made between appellant and his father, Ron Sr. On September 5, 2006, appellees filed a motion for summary judgment. On February 15, 2007, appellant filed a motion to compel and a motion for reconsideration of the trial court's prior ruling granting appellees' motion for a protective order. On March 5, 2007, appellant filed a memorandum contra to appellees' motion for summary judgment and cross-motion for summary judgment.
 {¶ 8} On August 14, 2007, the trial court determined no contracts were formed between appellant and Ron Sr., as appellant's claims were based solely on his belief of what promises were made regarding the future of the business. The trial court also determined appellant's employment with Callander Cleaners was "at-will" employment, and appellant was subject to termination at any time; hence, there could be no breach of an alleged contract for employment in exchange for refraining from filing a workers' compensation claim. In conclusion, the trial court granted summary judgment in favor of appellees on all of appellant's claims. Given the trial court's disposition of appellees' *Page 4 
motion for summary judgment, the trial court found appellant's motion for summary judgment, motion to compel, and motion for reconsideration to be moot.
 {¶ 9} This appeal followed, and appellant brings the following two assignments of error for our review:
 1. The trial court erred by granting the defendants' motion for summary judgment and denying the plaintiff's motion for summary judgment.
 2. The trial court erred by denying discovery essential to the issue of, among others, whether agreements were reached between Michael Callander and his father Ronald Sr. concerning ownership of the family business, and payment of salary and benefits.
 {¶ 10} This matter was decided in the trial court by summary judgment, which under Civ. R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ. R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 11} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Patsy Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an *Page 5 
independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440, 445. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 12} We initially note that although appellant's complaint contained four causes of action, he makes no argument on appeal regarding the trial court's ruling with respect to his claim for unjust enrichment. Secondly, in his reply brief, appellant suggests we are not presented with a final appealable order because his declaratory judgment claim is still pending before the trial court. Appellant asserts the claim is still pending because the trial court failed to make a specific finding with respect to same. Appellant's claim for declaratory judgment asked the trial court to establish "his rightful and legal ownership position" in Ron Sr.'s businesses, including the trust established to protect his interests. However, the trial court found no existing agreement pertaining to appellant's ownership in the business, and thus there were no rights for the trial court to declare. Additionally, appellees sought and were granted summary judgment with regard to all of appellant's claims. As such, we do not find a lack of a final appealable order in the matter before us.
 {¶ 13} Proceeding now to appellant's arguments, he asserts in his first assignment of error that his claims for breach of contract and estoppel result from two separate agreements: (1) an agreement for Ron Sr. to transfer partial ownership of the family business; and (2) an agreement not to file a workers' compensation claim in exchange for the continued payment of wages and benefits. It is undisputed that no writings exist with respect to either alleged agreement. *Page 6 
 {¶ 14} We will first address appellant's claims of breach of contract and estoppel pursuant to the alleged contractual agreement for Ron Sr. to transfer partial ownership of the business to appellant and his siblings. It is fundamental that the formation of contract requires an offer, acceptance of the offer and consideration. Hoyt v. NationwideMut. Ins. Co., Franklin App. No 04AP-941, 2005-Ohio-6367, at ¶ 40. However, an offer must be specific enough to form the basis for a meeting of the minds. Id.
 {¶ 15} "`In addition to a meeting of the minds, a contract must also be definite and certain with respect to its essential terms.'" Bliss v.Chandler, Geauga App. No. 2006-G-2742, 2007-Ohio-6161, at ¶ 57, quotingBiddle v. Warren Gen. Hosp. (Mar. 27, 1998), Trumbull App. No. 96-T-5582, citing Episcopal Retirement Homes, Inc. v. Ohio Dept. ofIndus. Relations (1991), 61 Ohio St.3d 366, 369 (because essential terms to the alleged agreement were lacking, the court found an oral contract for the sale of the company to the employees did not exist). However, "it is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, `making a contract for the parties,' no enforceable obligation results." Litsinger SignCo., Inc. v. Am. Sign Co. (1967), 11 Ohio St.2d 1, 14.
 {¶ 16} According to appellant, "the elements for an express agreement are established in the evidence." (Appellant's brief, at 16.) However, it is clear from appellant's deposition testimony that, at best, the evidence demonstrates vague statements about the future possibilities of the business. The following exchange occurred at appellant's deposition: *Page 7 
 Q: What, if anything, do you recall him telling you about what your ownership role would be if you work in the family business at that time?
 A: That you will be partners if this is what you want to do and this is where you stay and you prove yourself, that you and your brother and your sister will be equal owners in this.
 Q: Did he give you any kind of a timetable when that would happen?
 A: Well, the way he worded it, either his time to retire or his untimely demise.
(Appellant's Depo. at 53.)
 {¶ 17} According to appellant, these conversations took place "on a routine basis" from the time of his return to Callander Cleaners in 1998 until 2001. Id. at 58. However, when asked if Ron Sr. gave an indication of when he wanted to retire, appellant answered, "not a specific time frame." Id. at 64. "He never really said. He said he would like to be out by 70, 71, 72, but it could change, you know, at any time. But then once my uncle passed, there had been some restructuring in the company." Id.
 {¶ 18} At Ron Sr.'s deposition, he was asked if he made any representations to the children that if they worked hard, and continued to operate the businesses, that he would eventually concede ownership. Ron Sr. replied:
 We've always in meetings that we would have periodically about various issues, those issues mainly were brought up by my oldest son, Ron, Jr., who was constantly after me about where I was going to go with my personal assets and so forth. I'm sure those discussions had come up.
 I was always purposefully be [sic] vague, and I never guaranteed anybody anything whether they stayed or left — if they left the business, they're out. But if they stayed, there was no guarantees.
(Ron Sr.'s Depo. at 64.) *Page 8 
 {¶ 19} We find the above statements insufficient to constitute a meeting of the minds and form a binding contract. Though not argued in the context of being an employment dispute, we find this matter analogous to employment cases alleging breach of contract and wrongful termination based upon an employer's statements regarding future employment opportunities. In Daup v. Tower Cellular, Inc. (2000),136 Ohio App.3d 555, this court was presented with a trial court's grant of summary judgment in favor of the defendants on the plaintiff's complaint, which included claims for breach of contract and promissory estoppel stemming from his termination of employment. Daup was hired by the defendants in 1995, and was terminated from employment in 1996.
 {¶ 20} Daup testified at his deposition regarding statements his employer made to him:
 * * * You are going to be my — you know, my right-hand guy for a long, long time. We are going to have many other businesses. We are going to have many other ventures together. We have a great sales staff here. We will implement new products with them. You know, see the big picture. Look at this five, ten years from now. Look where you are going to be. Look how well you are doing now. It's just going to get bigger and better.
 And so was there an exact date set? No. But to me, five, ten years came up all the time. (Daup, Depo. 124.)
 Daup further testified that he and LeVeque would go to lunch and LeVeque would tell him "we were going to get into something else and that we could move our sales force into another opportunity * * * . And * * * he always told me to look at the big picture and see yourself five years from now." (Daup, Depo. 82-83.)
Id. at 561-562. *Page 9 
 {¶ 21} This court determined that the above-quoted testimony did not establish a meeting of the minds sufficient to form a binding contract and alter the at-will employment status of the plaintiff. We began our analysis in Daup with a discussion of well-established Ohio law that "`unless otherwise agreed, either party to an oral employment at-will employment agreement may terminate the employment at any time.'" Id. at 560, quoting Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraph one of the syllabus. "Thus, `under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either,' and an employee `is subject to discharge by an employer at any time, even without cause.'" Id. at 560-561, quoting Wright v. Honda of Am. Mfg., Inc. (1995),73 Ohio St.3d 571, 574. However, "the terms of discharge may be altered when the conduct of the parties indicates an intent to impose different conditions regarding discharge." Id. Condon v. Body, Vickers Daniels (1994), 99 Ohio App.3d 12, 18.
 {¶ 22} The Supreme Court of Ohio has noted two exceptions to the employment-at-will doctrine: "(1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee." Wright, supra, at 574; Daup, supra. "Consistent with the presumption of at-will employment, it is recognized that `the party asserting an implied contract of employment has a heavy burden. * * * [Plaintiff] must prove the existence of each element necessary to the formation of a contract.'" Daup at 561, quotingCorradi v. Soclof (May 25, 1995), Cuyahoga App. No. 67586; Penwell v.Amherst Hosp. (1992), 84 Ohio App. 3d 16, 21. Rudy v. Loral DefenseSys. (1993), 85 Ohio App.3d 148, 152. Therefore, plaintiff must show a "meeting of the minds" *Page 10 
of the parties that the employment was other than at-will. Schwartz v.Comcorp., Inc. (1993), 91 Ohio App. 3d 639; Turner v. SPSTechnologies (June 4, 1987), Cuyahoga App. No. 51945.
 {¶ 23} Under Ohio law, "statements praising job performance or promising career advancement opportunities do not alter an at-will status." Daup, at 562, quoting Corradi, supra, citing Helmick v.Cincinnati Word Processing, Inc. (1989), 45 Ohio St.3d 131, paragraph three of the syllabus ("standing alone, praise with respect to job performance and discussion of future career development will not modify the employment at-will relationship").
 {¶ 24} Additionally, this court noted in Daup that other appellate courts have held that statements praising an employee's work performance or discussions regarding future opportunities are insufficient to establish an express or implied contract of employment altering an at-will relationship. See, e.g., Anders v. Specialty Chem. Resources,Inc. (1997), 121 Ohio App.3d 348, 351 (employer's statements assuring employee of a "secure future," a "secure career," and that he could be terminated only for inadequate performance insufficient to establish express or implied contracts or promissory estoppel); Condon v. Body,Vickers Daniels, supra, at 19 (statements by employer that firm was looking for associate to participate in five-year training program and statements that employee had a job as long as he did not "use the Firm or date the secretaries" found insufficient to establish an implied contract altering employee's at-will status); Clipson v. Schlessman
(1993), 89 Ohio App.3d 230, 233 (statements to employee that he was "in a good position with the company" and that he would "never have to worry about [his] job" indicate, at best, praise of employee's performance and discussions of his future, but not *Page 11 
evidence of an employment promise); Peters v. Mansfield Screw Mach.Prod. (1991), 73 Ohio App.3d 197, 200 (supervisor's statement that employee would have a job as long as the supervisor was there did not alter employee's at-will status); Healey v. Republic Powdered Metals,Inc. (1992), 85 Ohio App.3d 281, 284 (employee's at-will contract not modified by statements praising employee and telling him on his 37th anniversary with the company that he would be the first company employee to work there for 50 years); Lake v. Wolff Bros. Supply, Inc. (Nov. 10, 1993), Cuyahoga App. No. 63959 (summary judgment properly granted in favor of employer despite statements by employer discussing career advancement opportunities and telling employee not to worry, "if you do this well, you will have this position forever"). Id. at 562-563.
 {¶ 25} Like those that are insufficient to establish a contract of continued employment because they do not constitute a "meeting of the minds," the comments in the matter herein are insufficient to establish a contract regarding the transfer of ownership. These discussions at best indicate possible future career development and opportunities. As evidenced by appellant's testimony, Ron Sr.'s alleged promise was contingent on a number of factors, i.e., if appellant stayed, if appellant proved himself, with no stated time frame for completion. To find that an oral contract was formed, this court would essentially be creating a contract for the parties since so many essential terms are missing from the alleged oral agreement.
 {¶ 26} Moreover, even if a contract was formed, it was dependent on appellant staying in the business, which undisputedly he did not. Since the alleged discussions cannot constitute a contract for continued employment sufficient to alter the at-will employment status of appellant, and appellant was subject to termination at any time, *Page 12 
appellant cannot establish breach of contract resulting from his termination, or the failure to transfer ownership that by his own testimony was subject to him remaining with Callander Cleaners. Thus, we find no merit to appellant's argument that he, and not appellees, were entitled to summary judgment on this issue.
 {¶ 27} Appellant also asserts under this assignment of error that instead of appellees, he is entitled to summary judgment on his claims for promissory estoppel and equitable estoppel.
 {¶ 28} "`Equitable estoppel precludes recovery when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'"Holt Co. of Ohio v. Ohio Machinery Co., Franklin App. No. 06AP-911,2007-Ohio-5557, at ¶ 24, quoting Glidden Co. v. Lumbermens Mut. Cas.Co., 112 Ohio St.3d 470, 2006-Ohio-6553, at ¶ 52, quoting State ex rel.Chavis v. Sycamore City School Dist. Bd. of Edn. (1994),71 Ohio St.3d 26, 34. See, also, Hortman v. Miamisburg, 110 Ohio St.3d 194,2006-Ohio-4251, at ¶ 18-20 (discussing equitable estoppel).
 {¶ 29} "`The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice.'"Holt Co., supra, at ¶ 25, quoting Doe v. Archdiocese of Cincinnati,109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 43, reconsideration denied,110 Ohio St.3d 1444, 2006-Ohio-3862, quoting Ohio State Bd. of Pharmacy v.Frantz (1990), 51 Ohio St.3d 143, 145.
 {¶ 30} By contrast, the Supreme Court of Ohio has observed that "[promissory estoppel has been defined * * * as `[a] promise which the promisor should reasonably *Page 13 
expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'"Holt Co., supra, at ¶ 26, quoting Hortman, at ¶ 23, quoting Restatement of the Law 2d, Contracts (1981), 242, Section 90.
 {¶ 31} "Thus, the key distinction between the two doctrines [of equitable and promissory estoppel] is whether the estoppel arises from a promise and not a misstatement of fact." Holt Co., supra, at ¶ 27. "The difference between the doctrines [of equitable estoppel and promissory estoppel] can best be explained by observing that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield." Id. at ¶ 28, quoting Jablon v. United States (C.A.9, 1981), 657 F.2d 1064,1068. See, also, Doe, at ¶ 43 (stating that equitable estoppel "is available only in defense of a legal or equitable right or claim made in good faith") (emphasis added); First Federal Sav. Loan Assn., at 144 (stating that "estoppel is, according to the usual statement, a shield, not a sword. It does not furnish a basis for damages claims, but a defense against the claim of the stopped party").
 {¶ 32} Because promissory estoppel, not equitable estoppel, properly is used to create a cause of action, we find appellees were indeed entitled to judgment as a matter of law on the equitable estoppel claims.
 {¶ 33} Regarding promissory estoppel, "[a] claim of promissory estoppel involves four elements: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) the reliance is reasonable and foreseeable, and (4) the party *Page 14 
relying on the promise must have been injured by the reliance."Patrick v. Painesville Commercial Properties, Inc. (1997),123 Ohio App.3d 575, 583, citing Doe v. Adkins (1996), 110 Ohio App.3d 427, 437.
 {¶ 34} The statements upon which appellant relies to establish promissory estoppel are all either discussions of future career developments or promises of future opportunities, and are not sufficient to establish a promissory estoppel claim. As we have already discussed, there is nothing either clear or unambiguous about the alleged promises made. See, Anders; Clipson; Lake. See, also, Dunn v. Bruzzese,172 Ohio App.3d 320, 2007-Ohio-3500 (statements that the defendant "never wanted [his secretary] to quit," "the day that [my secretary] retires is the day that I retire," "where I go, [my secretary] goes" were not clear and unambiguous promises sufficient to prove a claim of promissory estoppel).
 {¶ 35} Additionally, there is no evidence that appellant relied on any promise to his detriment.
 Q: Okay. Again, in here you talk about foregoing any other business opportunities. In your discovery responses, you indicated that there were no business opportunities that you had that you turned down during this time period. Is that accurate?
 A: Yes. I never sought any.
 Q: And no one came to you and offered you something that you said, no, I don't want to do that because I'm staying with the company. Is that true?
 A: Absolutely.
(Appellant's Depo. at 77-78.) *Page 15 
 {¶ 36} Thus, the trial court did not err in granting summary judgment on the promissory and equitable estoppel claims with respect to the alleged agreement to transfer ownership of the business.
 {¶ 37} Also contained under his first assignment of error is appellant's claim that Ron Sr. breached the contract entered into by the parties when the parties agreed that appellees would continue to pay appellant wages and benefits indefinitely in exchange for appellant not filing a claim for workers' compensation benefits. Appellant testified:
 Q: Tell me about that conversation that you had with your dad.
 A: He specifically told me don't ever make a Workers' Comp claim. We'll just handle it through the company's insurance. No since [sic] in getting Workers' Comp involved. It makes my rates go up and blah, blah, blah, and just handle it through the regular insurance. Just use regular insurance that was provided.
 A: * * * He said, don't file a Workers' Comp claim. I'll continue to pay you and provide your insurance.
 Q: And you indicate here that he would continue to indefinitely do that.
 So it was your understanding that he would continue to pay your salary and your insurance forever?
 A: That's basically what he told me.
(Appellant's Depo. at 94-96.)
 {¶ 38} According to appellant, this was not an agreement "related to his employment per se," but, rather, a simple agreement for wages and benefits in exchange for refraining from filing a workers' compensation claim. However, we cannot ignore the *Page 16 
underlying employment relationship of the parties, which we have already determined was that of employment-at-will.
 {¶ 39} As previously expressed, we recognize that employment-at-will relationships can be altered by the existence of express or implied contractual promises or the existence of promissory estoppel, where representations have been made to an employee. Daup, supra. Again, however, we find there is no evidence that representations were made indicating that appellant's employment was secure regardless of any other factor. To accept appellant's position would be to create a contract for the parties providing for appellant's indefinite employment regardless of job performance, job capabilities, or evenreturning to work. Such illuminates the ambiguous nature of what appellant alleges occurred, and therefore, is insufficient to constitute a meeting of the minds to create a contract so as to alter the employment relationship from one of at-will to one of indefiniteness.
 {¶ 40} Further, "[a] promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine."Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph two of the syllabus. . (Emphasis added.) Clearly, we are not presented with clear and unambiguous promises sufficient to satisfy appellant's promissory estoppel claims. See Dunn, supra. See, also, Andres v. DrugEmporium, Inc. (Aug. 30, 2001), Franklin App. No. 00AP-1214 (testimony that defendants routinely discussed a "long-term commitment" with plaintiff did not constitute clear and unambiguous promises of continued employment). *Page 17 
 {¶ 41} For these reasons, we find no error in the trial court's grant of summary judgment to appellees on these claims regarding the alleged agreement pertaining to the filing of a claim for workers' compensation benefits. Accordingly, we overrule appellant's first assignment of error.
 {¶ 42} In his second assignment of error, appellant contends the trial court erred in denying his motion to compel discovery of (1) the trust created by Ron Sr.; and (2) Ron Sr.'s estate planning documents.
 {¶ 43} A trial court enjoys considerable discretion in the regulation of discovery matters. Akers v. Ohio State Univ. Med. Ctr., Franklin App. No. 04AP-575, 2005-Ohio-5160, at ¶ 7, citing Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. The decision whether or not to grant a protective order is within the trial court's discretion and will not be reversed absent an abuse of such discretion. Id., citingRuwe v. Bd. of Springfield Twp. Trustees (1987), 29 Ohio St.3d 59, 61. An abuse of discretion connotes more than an error of law or of judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Tracey v. Merrell Dow Pharmaceuticals
(1991), 58 Ohio St.3d 147, 152.
 {¶ 44} Appellant does not set forth how the trial court abused its discretion but, rather, argues the trial court erred because the documents sought "would either verify or refute the testimony of appellant and his brother that their father established the trust to transfer ownership and confirmed this in his will." (Appellant's brief at 20.) In granting appellees' motion for protective order with respect to these documents, the trial court stated:
 These documents are not relevant to any promises made to Plaintiff in the past and are not enforceable until death, *Page 18 
executory documents. In other words, this document can be changed at any time prior to death, therefore has no meaning prior to death.
(Oct. 26, 2006 Decision and Entry at 1-2.)
 {¶ 45} Appellant is seeking discovery of an alleged trust created by Ron Sr. and Ron Sr.'s estate planning documents. As the trial court held, these items are not relevant to the matter before us because they have no effect until Ron Sr. is deceased, and the items are subject to change until that time. Hence, we find no abuse of discretion in the trial court's decision to grant appellees' motion for protective order regarding said discovery. Capuder v. Capuder (Mar. 25, 1993), Cuyahoga App. No. 62035 (despite plaintiff's claims that testimony regarding defendant's last will and testament would provide support for his argument that the defendant intended to make a gift to plaintiff, the court upheld the trial court's exclusion of the testimony as irrelevant because the evidence pertained to executory documents that had no effect and were subject to change because the defendant was still alive).
 {¶ 46} Accordingly, we overrule appellant's second assignment of error.
 {¶ 47} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
SADLER, J., concurs.
BRYANT, J., concurring separately.