OPINION *Page 2 
{¶ 1} This matter is on appeal from the trial court's granting of appellee Ruth Huntsman's motion to compel appellant Dr. Chughtai to produce certain documents. It is also on appeal from the trial court's ruling that documents from various insurance companies, an insurance agency, the Bureau of Workers' Compensation, Aultcare HMO, Medical Mutual of Ohio and Anthem Blue Cross Blue Shield, Medicare and Medicaid must be submitted to the trial court for an in camera inspection. The trial court made these orders in separate judgment entries on October 5, 2006.
 STATEMENT OF FACTS AND CASE {¶ 2} Defendants-appellants, Sajid Q. Chughtai, M.D. and Sajid Chughtai M.D. Inc. appeal from the trial court's pre-trial discovery orders, which, inter alia, instructed Dr. Chughtai to produce documents which he provided to various hospitals' peer review processes, including, but not limited to, Aultman Hospital's, and which instructed various health insurers and professional liability insurers to produce various documents relating to Sajid Q. Chughtai to the court for in camera inspection.
 {¶ 3} The procedural history of this case is extensive. The underlying trial court matter involves a medical malpractice cause of action against Dr. Chughtai and a negligent credentialing cause of action against Aultman Hospital. There has also been a prior appeal to this Court involving the trial court's pre-trial discovery orders concerning the disclosure by Aultman Hospital of any records or documentation pertaining to Aultman Hospital's privileged peer review records.
 {¶ 4} The underlying action for medical malpractice and negligent credentialing was filed by appellee, Ruth Huntsman (hereinafter "Huntsman"), on behalf of the estate *Page 3 
of Aurelia K. Huntsman, now deceased. In the complaint, Ms. Huntsman alleges that Dr. Chughtai's medical negligence during a surgical procedure to repair a hernia proximately caused Aurelia Huntsman's death.
 {¶ 5} The complaint also alleges that Aultman Hospital negligently granted, renewed and maintained Dr. Chughtai's medical staff privileges. Specifically, the complaint alleges that Aultman Hospital should have been aware that Dr. Chughtai's medical staff privileges were not renewed at Massillon Community Hospital and that between July 7, 1987, and April 20, 1999, at least twelve medical negligence lawsuits were filed against Dr. Chughtai. Ms. Huntsman also alleges that Aultman Hospital's failure to consider these facts regarding Dr. Chughtai's professional competence led to his negligent credentialing by Aultman Hospital and placed him in a position to perform the allegedly negligent surgical procedure.
 {¶ 6} During the discovery phase, and in an initial effort to obtain documents supporting the negligent credentialing claim, Huntsman requested the production of Aultman Hospital's peer review records. Upon a review of the request and in an effort to comply with R.C. 2305.252, the trial court overruled Huntsman's request for the production of the actual peer review records. In the alternative, the trial court ordered Aultman Hospital to provide Huntsman with a list of the documents which had been considered by Aultman Hospital's peer review committee during Dr. Chughtai's peer review process. This initial discovery order led to the first appeal before this Court wherein both Dr. Chughtai and Aultman appealed the trial court's discovery order.
 {¶ 7} On March 28, 2005, in an opinion addressing both Dr. Chughtai and Aultman's claims, this Court determined that the trial court erred in ordering Dr. *Page 4 
Chughtai and Aultman Hospital to provide Huntsman with a list of documents from Aultman's peer review and credentialing files. SeeHuntsman v. Aultman Hosp. (2005), 160 Ohio App. 3d 196, 2005-Ohio-1482,826 N.E.2d 384, appeal denied 106 Ohio St. 3d 1487, 2005-Ohio-3978,832 N.E.2d 739. (Hereinafter "Huntsman I") Specifically, this Court held that any information produced during the peer review process was privileged and could not be ordered to be disclosed, even as a "list of documents", by the health care entity. This Court further stated that, although the documents could not be requested from the health care entity as "peer review records", the records did not enjoy the protection of R.C. 2305.252 outside the scope of the peer review process and were discoverable from original sources. Accordingly, this Court remanded the matter to the trial court for further proceedings consistent with the opinion.
 {¶ 8} On remand, Huntsman again pursued discovery of any information which supported the negligent credentialing claim. In that effort, on August 24, 2005, appellee served Dr. Chughtai personally with a request for the production of documents, and on August 30, 2005, Huntsman served notices of depositions duces tecum on several medical insurance companies/plans and professional liability insurance companies.
 {¶ 9} In the request for production of documents served on Dr. Chughtai personally, Huntsman sought the following documents believed to be in Dr. Chughtai's possession: (1) documents in any way related to Dr. Chughtai's accreditation and/or credentialing as a member of any hospital medical staff; (2) documents in any way relating to any application by Dr. Chughtai for professional liability insurance coverage that would in any way cover any claim or potential claim; (3) documents in any way relating to any notification given to any professional liability insurance company of any *Page 5 
claim or potential claim in any way involving Dr. Chughtai; and (4) documents in any way relating to Dr. Chughtai being approved or not being approved as a medical service provider by any health insurance company or health insurance plan.
 {¶ 10} In the notices of depositions duces tecum to the medical insurance companies/plans and professional liability insurers, Huntsman requested, inter alia, documents concerning Dr. Chughtai's qualification or status as an approved provider of medical services and documents regarding any application by Dr. Chughtai for liability insurance coverage.
 {¶ 11} The subpoenas issued to The Bureau of Workers' Compensation, Aultcare HMO, Medical Mutual of Ohio and Anthem Blue Cross Blue Shield specifically requested the following:[1]
 {¶ 12} "All documents relating to Sajid Q. Chughtai being approved or not being approved as a medical service provider under any health insurance contract or health insurance plan."
 {¶ 13} The subpoenas issued to American International Insurance Company, Frontier Insurance Company, Zurich American Insurance Company, Evanston Insurance Company, Physicians Insurance Company of Ohio, Physicians Insurance Company and Western Indemnity Insurance Company specifically requested the following: *Page 6 
 {¶ 14} "All documents in any way relating to Sajid Q. Chughtai, including but not limited to, all underwriting files, claims files, audit files and/or files regarding any application for insurance.
 {¶ 15} "All documents by and/or between you and anyone else including but not limited to any professional liability insurance company, Aultman Hospital and/or Sajid Q. Chughtai in any way relating to Sajid Q. Chughtai."
 {¶ 16} The depositions duces tecum were scheduled to proceed on September 26 and 27, 2005.
 {¶ 17} On September 22, 2005, Physicians Insurance Company of Ohio filed a motion to quash Huntsman's deposition duces tecum.
 {¶ 18} On September 23, 2005, Dr. Chughtai filed a motion for a protective order.
 {¶ 19} On September 27, 2005, Dr. Chughtai's malpractice insurance agent, Sirak Moore Insurance Agency, appeared for the deposition and produced the requested documents.
 {¶ 20} On October 11, 2005, Huntsman filed a motion to compel Dr. Chughtai to produce the requested documents. Specifically, the appellee sought to compel Dr. Chughtai to produce any of the following documents in his possession: incident reports, sentinel event reports, applications for medical privileges at any health care facility, filings with the National Practitioner Data Bank (NPDB), all personnel and accreditation files, all procedure and surgery logs, all quality/performance and physician profiles, all correspondence relating to medical staff privileges, all applications for professional liability insurance and all applications for approval as a medical service provider on a health plan. *Page 7 
 {¶ 21} On October 21, 2005, upon motion by Dr. Chughtai, the trial court stayed Huntsman's action, pending a decision by this court inFilipovic v. Dash, M.D., Stark App. Nos. 2005CA00209 and 2005CA00211,2006-Ohio-2809, regarding the constitutionality of R.C. 2305.252. On May 22, 2006, in Filipovic, this Court found R.C. 2305.252 to be constitutional in that it does not preclude discovery of information which, while undiscoverable from the peer review committee's records, is available from original sources. Accordingly, the trial court set the Huntsman case to proceed.
 {¶ 22} On October 5, 2006, the trial court issued seven judgment entries in response to the pending discovery matters.
 {¶ 23} In one of the entries filed on October 5, 2006, the trial court made several different orders as to disclosure of documents by the appellants. Pertinent to this appeal, the trial court ordered Dr. Chughtai personally to produce any of the following documents in his possession:
 {¶ 24} "2. All documents in any way relating to [Dr.] Chughtai's initial application for medical privileges and all applications for renewal of medical privileges at any health care facility, including but not limited to Aultman Hospital and Massillon Community Hospital. . . .
 {¶ 25} "4. All documents in any way relating to filings with the National Practitioner Data Base (NPDB), the Joint Commission on Accreditation of Health Care Organizations (JCAHO), the Federation of State Medical Board's (FSMB's) Physician Disciplinary Data Bank and the Ohio State Medical Board in any way relating to Dr. Chughtai. . . . *Page 8 
 {¶ 26} "9. All documents in any way relating to [Dr.] Chughtai's accreditation and/or credentialing as a member of any hospital medical staff. This request includes but is not limited to any document in any way relating to [Dr. Chughtai's] initial application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital and/or renewal application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital."
 {¶ 27} With regard to documents held by medical insurance companies/plans and by the professional liability insurance companies, in a separate judgment entry filed on October 5, 2006, the trial court held as follows:
 {¶ 28} "Physicians Insurance Company, Physicians Insurance Company of Ohio, Western Indemnity Insurance Company, Sirak-Moore Insurance Agency, Evanston Insurance Company, Zurich American Insurance Company, Frontier Insurance Company, Medical Mutual of Ohio, Anthem Blue Cross Blue Shield, American International Insurance Company, the Bureau of Workers' Compensation, Medicare, Medicaid and Aultcare HMO shall comply with their obligations to produce the subpoenaed documents IN THE FOLLOWING MANNER:
 {¶ 29} "The Court will limit Plaintiff's request to documents that only relate to Sajid Q. Chughtai, M.D.
 {¶ 30} "The parties will submit the requested discovery to the Court for an in camera inspection within 30 days of the date of this entry.
 {¶ 31} "If the requested information/file is more than 50 pages, the attorney for Dr. Chughtai will immediately notify the Court as to the number of pages in the file. The Court will then evaluate the discovery request. *Page 9 
 {¶ 32} "Copies of any pleadings associated with any lawsuit that may be referenced in Dr. Chughtai's file need not be reproduced. The company will provide the case number, case name, court and dates in lieu of the pleadings."
 {¶ 33} It is from these discovery orders that appellants, Dr. Chughtai and Dr. Chughtai M.D. Inc. now seek to appeal, setting forth the following assignments of error:
 {¶ 34} "I. THE TRIAL COURT'S OCTOBER 5, 2006, ORDER DIRECTING DR. CHUGHTAI TO PRODUCE INFORMATION AND DOCUMENTS HE PROVIDED TO VARIOUS HOSPITAL'S PEER REVIEW PROCESS, INCLUDING AULTMAN'S, IS VIOLATIVE OF THE STATUTORY PRIVILEGE SET FORTH IN R.C. 2305.252."
 {¶ 35} "II. THE TRIAL COURT'S DENIAL OF DR. CHUGHTAI'S MOTION FOR PROTECTIVE ORDER RELATIVE TO SUBPOENAS ISSUED TO DR CHUGHTAI'S HEALTH INSURERS IS SIMILARLY VIOLATIVE OF THE PRIVILEGES SET FORTH IN R.C. 2305.252."
 {¶ 36} After the notice of appeal was filed, on November 28, 2006, Huntsman filed a motion to dismiss the appellants' appeal from the October 5, 2006, Judgment Entry which ordered an in camera inspection of documents in the possession of the professional liability insurance companies and the medical insurance companies/plans because the order to produce documents for an in camera inspection is not a final appealable order. On January 7, 2007, the appellants filed a motion in opposition. On January 25, 2007, this Court ordered that the motion to dismiss would be considered at the time of the merit review.
 {¶ 37} Prior to addressing appellants' assignments of error, we must first address the applicable statutory law. *Page 10 
 {¶ 38} Huntsman argues that the former version of R.C. 2305.251 is applicable to this case as opposed to the current version of the statute, which was renumbered and modified as R.C. 2305.252 and which became effective April 9, 2003. In support, Huntsman argues that the events that gave rise to this case occurred in June 1999, prior to the effective date of R.C. 2305.252, and that the revised version of the statute gives no indication that it was to be applied retroactively. In addition, Huntsman contends that the statute affects a substantive right, thereby foreclosing retroactive application. We find that this issue was addressed and decided by this Court in Huntsman I, wherein this Court held that the revised version of the statute affected a procedural right and was therefore applicable to the pending action. The complaints in this case were originally filed on December 15, 2000, dismissed without prejudice on September 24, 2001, and refiled on September 20, 2002. Accordingly, we hereby find that the revised version of the statute is applicable to this case for the reasons set forth inHuntsman I.
 I {¶ 39} In the first assignment of error, the appellants, Dr. Sajid Q. Chughtai and Dr. Sajid Q. Chughtai, M.D. Inc., argue that the trial court erred as a matter of law and denied Dr. Chughtai the privilege protection of R.C. 2305.252 by failing to grant Dr. Chughtai's motion for a protective order and by compelling Dr. Chughtai, as an original source, to produce, inter alia, records he prepared for presentation and consideration in the peer review proceedings of various hospitals.
 {¶ 40} In their merit brief, the appellants argue that, if a plaintiff asks an individual for evidence within his knowledge, the responding party cannot answer that the *Page 11 
evidence is unavailable because it was disclosed to a peer review committee. In that instance, the individual is an original source for the information and the plaintiff is entitled to the testimonial knowledge the witness possesses. However, a plaintiff can not approach the inquiry by asking the peer review committee for the information or asking the individual to disclose or produce the information which was provided to a peer review committee. The information provided to the peer review committee is privileged. In other words, the plaintiff in the case sub judice could ask for certain information from Dr. Chughtai and Dr. Chughtai would have to produce it (unless excluded for some reason other than R.C. 2305.252). But Dr. Chughtai would not be required to answer whether that information had been provided by him to a peer review committee because that disclosure is privileged under R.C. 2305.252. Appellants argue that, to the extent that the trial court's order requires Dr. Chughtai to produce documents which he provided to peer review committees of heath care facilities for credentialing, accreditation and privileges, it was error. We agree.
 {¶ 41} R.C. 2305.252 and 2305.253 set forth the confidentiality of records and proceedings in the peer review process. R.C. 2305.252
provides an umbrella of protection to information which is collected and maintained by a peer review committee during a peer review process. R.C. 2305.252 addresses the confidentiality of peer review committee proceedings and provides in pertinent part as follows:
 {¶ 42} "Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide *Page 12 
health care, arising out of matters that are the subject of evaluation and review by the peer review committee. No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. An individual who testifies before a peer review committee, serves as a representative of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall not be prevented from testifying as to matters within the individual's knowledge, but the individual cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peerreview committee, or any opinion the individual formed as a result of the peer review committee's activities. An order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order." (Emphasis added)
 {¶ 43} R.C. 2305.25(E)(1) defines "peer review committee" in part as follows: *Page 13 
 {¶ 44} "`Peer review committee' means a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:
 {¶ 45} "(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;
 {¶ 46} "(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions. . . ."
 {¶ 47} The language in R.C. 2305.252, "manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings." Tenan v. Huston, 165 Ohio App.3d 185, 2006-Ohio-131,845 N.E.2d 549, at paragraph 23. However, the purpose of the statute is not to hinder lawsuits, but to provide limited protection to individuals who provide information to review committees or boards, thereby encouraging a free flow of information without fear of reprisal in the form of civil liability. Browning v. Burt (1993), 66 Ohio St.3d 544, 562,613 N.E.2d 993. If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee. See Wilson v.Bamesville Hosp., 151 Ohio App.3d 55, 61, 2002-Ohio-5186,783 N.E.2d 554. This is certainly not the purpose of the privilege in R.C. 2305.251, (renumbered and modified as 2305.252). Akers v. Ohio St. Univ.Med. Ctr., Franklin App. No. 04AP-575, 2005-Ohio-5160. *Page 14 
 {¶ 48} The language of the statute does not prohibit the discovery of information made available to a health care facility, liability carrier or network provider during a peer review process if that information can be obtained from an original source. See, Huntsman v. Aultman Hosp.
(2005), 160 Ohio App. 3d 196, 826 N.E.2d 384; Filipovic v. Dash,M.D., Stark App. Nos. 2005CA00209 and 2005CA00211, 2006-Ohio-2809. A party interested in obtaining the information used by a peer review committee must seek the information from the original source, and not from the records of the committee's proceedings. Cook v. ToledoHosp., 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181; Tenan v.Huston (2006), 165 Ohio App. 3d 185, 2006-Ohio-131, 845 N.E.2d 549.
 {¶ 49} A party asserting the privilege set forth in R.C. 2305.252 has the burden of establishing that the privilege is applicable. See, e.g.,Waldmann v. Waldmann (1976), 48 Ohio St.2d 176, 178, 358 N.E.2d 521;Svoboda v. Clear Channel Commun., Inc., 156 Ohio App.3d 307,2004-Ohio-894, 805 N.E.2d 559; Perfection Corp. v. Travelers Cas. Sur, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817. A trial court does not abuse its discretion in compelling disclosure of information from an original source, where a party has failed to establish that the documents were specifically sought because they were peer review records used in the peer review process. See Quinton v. Med. Central HealthSys., Richland App. No. 2006CA0009, 2006-Ohio-4238.
 {¶ 50} Generally, the review of a trial court's discovery order is pursuant to an abuse of discretion standard; but when the trial court's order contains an error of law in misconstruing or misapplying the law, then the appellate court reviews the matter de novo. Quinton v.MedCentral Health Sys., Richland App. No. 2006CA0009, 2006-Ohio-4238,2006 WL 2349548, at paragraph 13. The issue of the confidentiality of information *Page 15 
pursuant to R.C. 2305.252 is one of law. Id. See also, Smith v. ManorCare of Canton, Inc., Stark App. Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182; Huntsman v. AultmanHospital, Stark App. Nos. 2004CA00124 and 2004CA00142, 2005-Ohio-1482,826 N.E.2d 384.
 {¶ 51} In the case sub judice, the trial court ordered Dr. Chughtai to produce, inter alia, the following information in his possession:
 {¶ 52} "2. All documents in any way relating to Dr. Chughtai's initial application for medical privileges and all applications for renewal of medical privileges at any health care facility, including but not limited to Aultman Hospital and Massillon Community Hospital. . .
 {¶ 53} "4. All documents in any way relating to filings with the National Practitioner Data Base (NPDB), the Joint Commission on Accreditation of Health Care organizations (JCAHO), the Federation of State Medical Board's (FSMB's) Physician Disciplinary Data Bank, and the Ohio State Medical Board in any way relating to Dr. Chughtai. . . .
 {¶ 54} "9. All documents in any way relating to Dr. Chughtai's accreditation and/or credentialing as a member of any hospital medical staff, including but not limited to any document in any way relating to Dr. Chughtai's initial application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital and/or any renewal application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital. . . ."
 {¶ 55} By its order, the trial court compelled the appellants to disclose documents some of which were prepared by Dr. Chughtai and provided to health care entities to be *Page 16 
used in their peer review processes for medical accreditation, credentialing and privileges.
 {¶ 56} The appellants conceded that Dr. Chughtai, as an original source, may be asked to give testimony regarding information which he may or may not have supplied in these documents to the health care entities. But, as to the documents prepared by Dr. Chughtai and provided to the peer review committees, those documents are afforded the protection of R.C. 2305.252. Having asserted the privilege protection of R.C. 2305.252, Dr. Sajid Q. Chughtai and Dr. Sajid Q. Chughtai M.D., Inc. cannot be compelled to produce these documents. We agree because of the language in R.C. 2305.252 which states "* * * An individual who * * * provides information for a peer review committee shall not be prevented from testifying as to matters within the individual's knowledge, but the individual cannot be asked about the * * * information the individual provided to the peer review committee * * *".
 {¶ 57} For these reasons we find that the trial court erred as a matter of law in compelling Dr. Chughtai to produce any documents which he provided to the health care entities for use in their peer review processes including initial applications for medical privileges, applications for the renewal of medical privileges, applications for accreditation and/or applications pertaining to credentialing.
 {¶ 58} Additionally, we note that in the statement of this assignment of error, the appellants specifically address information and documents which Dr. Chughtai provided to various hospitals' peer review processes. However, the appellants also incorporate, by reference, Aultman Hospital's merit brief in related case number 2006CA00316 in which Aultman argues about the discoverability of documents submitted to the National *Page 17 
Practitioners Data Base, the Joint Commission on Accreditation of Health Care Organizations, the Foundation of State Medical Board's Physician Disciplinary Data Bank and the Ohio State Medical Board. (Number "4" of the trial court's October 5, 2006 order.) We find that the appellants' statement of this assignment of error fails to reference any entity other than hospitals. We further find that the trial court record before us does not establish that documents submitted to these non-hospital entities were submitted to entities with peer review committees, and, therefore, the record does not establish that these documents fall within the purview of the peer review privilege.
 {¶ 59} Appellants seem to also argue, regarding documents submitted to the non-hospital entities, that these documents are privileged because these documents "form a peer review committee's file". We concede that the statute is clear regarding confidentiality of information in a peer review committee's file. And we have found that an individual can not be asked whether or not he/she provided a specific piece of information to the peer review committee. But, information that may be of a type that usually makes up a peer review committee file is not protected by R.C. 2305.252 just because it usually makes up a peer review committee file.
 {¶ 60} Our interpretation of R.C. 2305.252 is that an individual can be asked for all sorts of information, but can not be asked if he/she provided that information to a peer review committee. Therefore, any applications prepared for a specific peer review committee are protected as privileged by R.C. 2305.252 because the document reveals what information was submitted to the committee. But, the individual can be asked about the information as long as the query does not ask whether the information was supplied to a peer review committee. *Page 18 
 {¶ 61} Accordingly, appellants' first assignment of error is well taken and is hereby granted in part. The order of the trial court, to the extent it compels the disclosure of any documents which the appellants provided to health care entities for use in their peer review processes, including initial applications for medical privileges, applications for the renewal of medical privileges, applications for accreditation and/or applications pertaining to credentialing, is hereby reversed.
 {¶ 62} The assignment is overruled in part, and the order affirmed, as to the order issued to Dr. Chughtai to produce documents filed with the National Practitioners Data Base, the Joint Commission on Accreditation of Health Care Organizations, the Foundation of State Medical Board's Physician Disciplinary Data Bank and the Ohio State Medical Board.
 II {¶ 63} In the second assignment of error, the appellants argue that the trial court abused its discretion in denying their request for a protective order and motion to quash, and in ordering the appellants' liability insurance carriers and medical network providers to produce documents, relating to Sajid Q. Chughtai, to the trial court for an in camera inspection of these documents.
 {¶ 64} Before reaching the merits of appellants' argument, we must first address the issues set forth in the appellee's motion to dismiss and appellants' response to the motion to dismiss. As such, we must address whether the order, from which the appellants seek to appeal in the second assignment of error, is a final appealable order.
 {¶ 65} Pursuant to Section 3(B)(2), Article IV of the Ohio Constitution, this Court's appellate jurisdiction is limited to the review of final orders of lower courts. "* * * The entire *Page 19 
concept of `final orders' is based upon the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof." Noble v.Colwell, (1989), 44 Ohio St. 3d 92, 94, 540 N.E.2d 1381 quotingLantsberry v. Tilley Lamp Co. (1971), 27 Ohio St. 2d 303, 306,272 N.E.2d 127. "A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order."State ex rel. Kieth v. McMonagle, 103 Ohio St. 3d 430, 2004-Ohio-5580,816 N.E. 2d 597, at paragraph 4, citing Bell v. Horton (2001),142 Ohio App. 3d 694, 696, 756 N.E.2d 1241.
 {¶ 66} R.C. 2505.02 (B) defines a final order to include:
 {¶ 67} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 68} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 {¶ 69} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 {¶ 70} "(3) An order that vacates or sets aside a judgment or grants a new trial;
 {¶ 71} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 72} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy. *Page 20 
 {¶ 73} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action * * *"
 {¶ 74} As used in section R.C. 2505.02:
 {¶ 75} "(1) `Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.
 {¶ 76} "(2) `Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.
 {¶ 77} "(3) `Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86
of the Revised Code, a prima-facie showing pursuant to section 2307.92
of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code. R.C. 2505.02(A) * * *" (Emphasis added).
 {¶ 78} Appellants argue that the trial court's order, denying the motion to quash and motion for a protective order and ordering an in camera inspection of what appellants allege are peer review records, is a final, appealable order pursuant to R.C. 2305.252. R.C. 2305.252
states that "* * * An order by a court to produce for discovery or for use at trial the proceedings or records described in this section [i.e. peer review records] is a final order." Appellee argues that a trial court's order for an in camera *Page 21 
inspection of certain documents, rather than an order to provide documents to the adverse party, is a non-final order. We agree with the appellee.
 {¶ 79} Generally, discovery orders are not appealable. Walters v.Enrichment Center of Wishing Well, Inc. (1997), 78 Ohio St.3d 118,676 N.E. 2d 890. However, if the judgment orders a party to disclose allegedly privileged material, it is appealable pursuant to R.C. 2505.02(A) (3) and (B) (4).
 {¶ 80} An exception would be when the trial court directs a witness opposing a discovery request for alleged privileged materials to submit the requested materials to the trial court for an in camera review. In that case, when the trial court orders that the materials shall be subject to an in camera review so that the court may determine their discoverable nature, the order for an in camera review is not a final, appealable order pursuant to R.C. 2505.02. Bell v. Mount Sinai MedicalCenter (1993), 67 Ohio St. 3d 60, 65, 616 N.E. 2d 181. See, also,King v. American Standard Ins. Co., Lucas App. No. L-06-1306,2006-Ohio-5774 (holding that a court's order directing "a plaintiff to submit requested materials to an in camera review so that the court can determine whether the documents are protected from disclosure on some alternative basis, including other bases of privilege or confidentiality, * * * is not a final appealable order * * *); Gupta v. LimaNews, 143 Ohio App. 3d 300, 2001-Ohio-2142, 757 N.E. 2d 1227 (holding that only if the court compelled disclosure of the documents after an in camera inspection would the appellant's substantial rights be affected and the order would become final, and thus appealable); Ingram v. AdenaHealth System (2001), 144 Ohio App. 3d 603, 761 N.E. 2d 72; Neimann v.Cooley (1994), 93 Ohio App. 3d 81, 637 N.E. 2d 72; Keller v. Kehoe, Cuyahoga App. No. 89218, 2007-Ohio-6625. *Page 22 
 {¶ 81} In this case, the trial court ordered the documents to be submitted to it for an in camera inspection. The order does not appear to exclude the possibility that the trial court will review the documents to determine whether each are protected by the peer review privilege in R.C.2305.252. The trial court has retained jurisdiction to make further determinations regarding the discoverability of the requested materials.
 {¶ 82} Appellant urges us to find that an in camera inspection would essentially open the documents to some review which would compromise the confidential nature of the documents and violate the privilege set forth in R.C. 2305.252, citing in support Everage v. Elk and Elk,159 Ohio App. 3d 220, 2004-Ohio-6186, 823 N.E. 2d 516. In Everage, the trial court required an in camera inspection of documents relating to grievances which had been filed against attorneys in the law firm. Initial grievance filings, until probable cause has been determined, are usually not public.
 {¶ 83} In King v. American Standard Ins. Co., supra, the court addressed this issue. In King, the appellant argued that an in camera inspection would let the proverbial cat out of the proverbial bag. TheKing court stated as follows: "We have only found one appellate court that agrees with this argument. [Footnote omitted]. In Everage v. Elkand Elk * * * the Third District Court of Appeals stated:
 {¶ 84} "The trial court's denial of appellant's motion for a protective order regarding grievances or complaints filed with an attorney disciplinary panel is a final, appealable order, as it relates to the discovery of privileged matter. Due to the unique and confidential circumstances of an attorney disciplinary proceeding, the disclosure could not be meaningfully appealed after the trial court's in camera inspection. Once the trial court reviews the documents, their confidentiality will have been compromised. *Page 23 
Accordingly, the trial court's order for the production of documents determines the discoverability matter, See R.C. 2505.02(B) (1).' Id."
 {¶ 85} Upon review of this argument, the King court held as follows: "We find this reasoning unpersuasive. Disclosing privileged information to a judge for in camera inspection is not tantamount to disclosing it to the opposing party in the case. Confidentiality has not been compromised; our judiciary can be trusted to keep confidential information confidential." King v. American Standard Ins. Co. supra at paragraph 27.
 {¶ 86} The King court found its decision to be in conflict withEverage v. Elk and Elk and certified the matter to the Supreme Court for review. Specifically they certified the following question, "Is an order to turn over allegedly privileged material to the trial court for an in camera inspection a final appealable order pursuant to R.C. 2505.02(A)(3) and (B)(4). On January 24, 2007, the Supreme Court dismissed the case holding that no conflict existed. King v. Am. Std.Ins. Co. of Ohio, 112 Ohio St.3d 1437, 860 N.E.2d 763, 2007-Ohio-152
(Ohio Jan 24, 2007) (TABLE, NO. 2006-2162)
 {¶ 87} We concur with the decision in King v. American Standard Ins.Co. and find the decision in Everage to be both unpersuasive and distinguishable from the facts in this case. In Everage, the appellate court determined that a trial court's order directing the disclosure of confidential documents to it for an in camera review, when those documents involved complaints made against attorneys and to the Office of the Disciplinary Counsel and pursuant to the Ohio Supreme Court's Gov.Bar. R.V., was a final, appealable order. The rules specifically state that attorneys involved in the grievance process have a right to privacy. Privacy is defined by the rule as "the right of *Page 24 
an attorney to the right of privacy as to the proceedings, a right that may be waived in certain limited situations." See Gov. Bar R. V (11) (E) (1) (a) through (c).
 {¶ 88} Unlike the circumstances in Everage, the case sub judice involves the peer review privilege and the protection provided by R.C. 2305.252. The peer review privilege is meant to promote the free flow of information into a peer review committee, not to protect a privacy right. Nothing in R.C. 2305.252 sets forth a right to privacy. Furthermore, the protection of the free flow of information into a peer review process will not be compromised by an in camera review. A private review, prior to any order for the production of documents to an adverse party, by a competent judge who is sworn to maintain confidentiality does not compromise the free flow of information that the privilege is meant to protect.
 {¶ 89} In addition, Everage is distinguishable in another way from the case sub judice. The trial court's order in Everage dealt with a very specific and definite class of information: grievances which had been filed against attorneys. The documents subject to the court's order in the case sub judice are not as homogeneous in nature. In other words, the trial court in the case sub judice could issue different rulings regarding the peer review privilege as to each document presented.
 {¶ 90} For these reasons, we find that the trial court's order of October 5, 2006, requiring various insurance companies, the Sirak-Moore Insurance Agency, the Bureau of Workers' Compensation, Medicare, Medicaid, Aultcare HMO, etc. to produce documents to the trial court for an in camera inspection, is not a final, appealable order. Accordingly, this Court lacks jurisdiction to consider appellants' second assignment of error. *Page 25 
 {¶ 91} The judgment of the Stark County Court of Common Pleas is hereby reversed in part and affirmed in part as to appellants' first assignment of error. We decline to consider appellants' second assignment of error for lack of jurisdiction, and the appeal of the order of October 5, 2006, which directs an in camera inspection of documents, is dismissed.
 Edwards, J., Farmer, P.J., and Wise, J. concur. *Page 26 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the October 5, 2006, judgment of the Stark County Court of Common Pleas, which compels Dr. Chughtai to produce documents, is reversed as to ruling numbers 2 and 9 and affirmed as to ruling number 4. The appeal by Sajid Q. Chughtai, M.D. and Sajid Q. Chughtai, M.D., Inc., of the October 5, 2006, judgment of the Stark County Court of Common Pleas, which ordered various insurance companies, an insurance agency, etc. to produce documents to the trial court for an in camera inspection, is dismissed for lack of a final, appealable order. *Page 27 
Therefore, the Motion to Dismiss filed by Ruth Huntsman in this case on November 28, 2006, is granted as to the appeal set forth in the second assignment of error. Costs assessed 50% to appellants and 50% to appellees.
[1] The subpoenas for Medical Mutual of Ohio, Anthem Blue Cross Blue Shield, American International Insurance Company, Frontier Insurance Company, Zurich American Insurance Company, Evanston Insurance Company, Physicians Insurance Company of Ohio, Physicians Insurance Company and Western Indemnity Insurance Company were served "c/o Sirak-Moore Insurance Agency, as Agent * * *" *Page 1