[Cite as *In re H.M.*, 2018-Ohio-2201.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: H.M., A MINOR CHILD | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 17-CA-81 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. A2017-0291

JUDGMENT:      Affirmed in part; reversed in part and remanded

DATE OF JUDGMENT ENTRY:      June 5, 2018

APPEARANCES:

For - Appellee

MANDY DELEEUW
Assistant Prosecuting Attorney
20 Second St., 4th Floor
Newark, OH 43055

For - State of Ohio
BILL HAYES
Licking County Prosecutor
20 South Second Street
Newark, OH 43055

For - H.M.

CHARLYN BOHLAND
Assistant Public Defender
250 East Broad Street, Ste. 1400
Columbus, OH 43215

Guardian Ad Litem
CAROLYN E. FITTRO
1335 Dublin Road, Ste. 104D
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Defendant-appellant H.M., a juvenile, appeals the judgment of the Licking County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for committing the offenses of two counts of rape, and one count of Gross Sexual Imposition.

*Facts and Procedural History*

{¶2} 18-year-old C.P. testified that she does not get along with her 17-year-old brother, H.M. C.P. also explained that she and H.M. had engaged in sexual conduct when they were younger. C.P. testified about two incidents that took place at their home. C.P. testified that in September 2016 H.P. forced his way into her bedroom,

So, I got up to close the door, and, of course, him being stronger than me, that wasn't happening so we struggled with the door for a minute.

* * *

He had his like - - foot in like blocking it and he's like laughing because he knows he's stronger and I'm not going to be able to close it.

T., Sept. 22, 2017 at 24.

{¶3} H.M. proceeded into C.P.'s room and asks her if she "wanted to do it." T., Sept. 22, 2017 at 25. C.P. said "no, that we can't do that anymore." H.M. proceeded to grab her arm, and took her to his room. C.P. demonstrated for the court how H.M. grabbed her arm. T., Sept. 22, 2017 at 25. At H.M.'s insistence, C.P. put her mouth on H.M's penis and tried to give him a blowjob "for maybe like three seconds," but stopped because she felt like she was going to puke on him. Then, H.M. put C.P.'s hands on his penis; and C.P. tried to give him a hand job for about three more seconds, but could not

do it.  C.P. left H.M.'s room, and ran back to her room and locked the door.  C.P. did not tell their mother, B.M., what had happened.

{¶4}    In December or January 2016, C.P. testified that H.M. came into C.P.'s room, grabbed her arm, walked her all the way to his bed and told her to lie down.  H.M. then told C.P. to pull down her pants.  C.P. testified,

> I didn't - - didn't really see a reason to fight because again, stronger,
>
> not going to win.  At this point in time he had evolved the threats into killing
>
> me so I wasn't even going to say a word back to him about anything.

T., Sept. 22, 2017 at 32.

{¶5}    H.M. put his mouth on C.P.'s vagina and stopped when C.P. told him to stop.  C.P. testified,

> Yeah.  I told him, I said, "Stop" because there was like panic in my
>
> voice and he heard that.

* * *

> I pulled up my pants, literally leaped off the bed and ran into my room
>
> slammed the door and locked it.

* * *

> Me leaping kind of looked like flying because I didn't see the floor.

T., Sept. 22, 2017 at 33-34.

{¶6}    C.P. testified that H.M. is stronger than she is.  C.P. further testified that H.M. had threatened to kill or harm her in the past.

{¶7}    Detective Steven Vanoy of the Newark Police Department interviewed both C.P. and H.M. about the incidents.  Detective Vanoy explained that H.M initially denied

the allegations. When Detective Vanoy asked H.M. how his D.N.A. got on C.P. H.M. admitted that one night when he was very drunk, he wet his hand with saliva and put his hand on C.P.'s vagina.

{¶8} Prior to trial, H.M. and his attorney agreed to undertake a polygraph assessment. At trial, Cindy Erwin, a polygraph examiner at BCI & I testified about the process for administering the polygraph test. Ms. Erwin reviewed background information, formulated questions that were reviewed by the prosecutor and defense counsel, and met with H.M. prior to the test. Ms. Erwin explained that polygraph results are 75% to 92% accurate. After consultation with counsel, Ms. Erwin asked H.M. the following questions:

1). After you got home from DYS the last time, did you ever threaten to hurt [CP.] if she did not put her mouth on your bare penis?

2). After you got home from DYS the last time, did you ever force [C.P.] to masturbate you?

3). Did you ever force [C.P.] to let you put your mouth on her bare vagina?

T., Sept. 22, 2017 at 174. The test was administered three times, each showing that H.M. was deceptive. T., Sept. 22, 2017 at 182. Ms. Erwin also confirmed that she misspoke during the test and used the wrong name when asking H.M. the questions. However, Ms. Erwin stated that the results were not impacted by her mistake.

{¶9} H.M. admitted that he had threatened to kill C.P. in the past. T. Sept. 22, 2017 at 242-243. He further admitted to making threats to harm C.P. "multiple times." T.,

Sept. 22, 2017 at 243.  H.M. admitted that he had physically assaulted C.P. in January 2017.  T. Sept. 22, 2017 at 243.

{¶10}  At the end of the hearing, the judge remarked:

> Now, if I were to decide this case solely upon the testimony of your sister and nothing more, quite frankly I would find that the State failed to prove beyond a reasonable doubt your guilt.  If I considered only your sister's testimony.  But, there is more.  What is that more? That more is the results of the polygraph examination.  And that more is also, frankly, your testimony.

T. Sept. 22, 2017 at 271.

{¶11}  H.M. was adjudicated delinquent by the juvenile court on all three counts. The court order H.M.  committed to the Department of Youth Services for a minimum of two years, maximum to his 21st birthday.  At the disposition hearing, the juvenile court classified H.M. as a tier III juvenile offender registrant.

*Assignments of Error*

{¶12}  H.M. raises five assignments of error:

{¶13}  "I. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED H.M. AS A JUVENILE OFFENDER REGISTRANT BECAUSE IT DID NOT MAKE THAT DETERMINATION UPON HIS RELEASE FROM THE SECURE FACILITY, IN VIOLATION OF R.C. 2152.83(A)(1).

{¶14}  "II. THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT FAILED TO USE ITS DISCRETION AND CLASSIFIED H.M. AS A TIER III JUVENILE

OFFENDER REGISTRANT WITHOUT HOLDING A HEARING TO DETERMINE TIER LEVEL, IN VIOLATION OF R.C. 2152.83(A) AND R.C. 2152.831.

{¶15} "III. THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENSE COUNSEL'S REQUEST FOR A CONTINUANCE, AND JUVENILE SEX OFFENDER AND PSYCHOLOGICAL EVALUATIONS, IN VIOLATION OF JUV.R. 1, JUV.R. 23, JUV.R. 29(F), AND R.C. 2152.831.

{¶16} "IV. THE JUVENILE COURT VIOLATED H.M.'S RIGHT TO DUE PROCESS WHEN IT ADJUDICATED HIM DELINQUENT OF RAPE AND GSI, WHEN THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.

{¶17} "V. H.M. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION."

## I. II. & III.

{¶18} During disposition in this case, the juvenile court committed 17-year-old H.M. to DYS for a minimum period of 2 years, maximum to his 21st birthday. Further, the juvenile court classified H.M. as a tier III juvenile offender registrant with a duty to register every 90 days for life.

{¶19} In his first three assignments of error, H.M. contends that the juvenile offender registrant determination should be made upon release from the secure facility; that a hearing should be held to determine H.M.'s tier level; and that a psychological evaluation of the H.M. should be performed.

**STANDARD OF APPELLATE REVIEW**

{¶20} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**ISSUE FOR APPEAL**.

*Whether the juvenile court erred in classifying H.M. as a tier III juvenile offender registrant with a duty to register every 90 days for life at the dispositional hearing after the juvenile court committed H.M to a secured facility.*

{¶21} The age of a delinquent child at the time he or she committed the offenses determines whether and how the child may be classified as a sex offender. *In re. D.S.*, 146 Ohio St.3d 182, 2016–Ohio–1027. R.C. 2152.82 thru 2152.86, as well as R.C. Chapter 2950, set forth Ohio's structure for juvenile-sex-offender classification and registration. Specifically, R.C. 2152.191 identifies which juvenile offenders are subject to classification and registration requirements. The statute essentially provides that children

14 years or older are subject to classification so long as the offense occurred on or after January 1, 2002.

**{¶22}** Whether such classification is mandatory or discretionary is determined by the child's age at the time he or she committed the offense. According to R.C. 2152.83(B), classification is discretionary for juvenile offenders who are 14 or 15 years old at the time of the offense and who are not otherwise subject to repeat-offender classification or serious-youthful-offender classification. *In re I.A.*, 140 Ohio St. 3d 203, 2014–Ohio–3155.

**{¶23}** Pursuant to R.C. 2152.83(A), classification is mandatory when the child offender is 16 or 17 years old at the time of his or her offense,

(1) The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility, an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code if all of the following apply:

(a) The act for which the child is or was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

(b) The child was sixteen or seventeen years of age at the time of committing the offense.

(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile

offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

(2) Prior to issuing the order required by division (A)(2) of this section, the judge shall conduct a hearing under section 2152.831 of the Revised Code, except as otherwise provided in that section, to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender. When a judge issues an order under division (A)(1) of this section, the judge shall include in the order the determinations identified in division (B)(5) of section 2152.82 of the Revised Code.

**{¶24}** In the case at bar, H.M. was 17 years old at the time of the offense. The juvenile court committed him to the custody of the Department of Youth Services in a secure facility. Accordingly, the juvenile court's only option was to classify him "at the time of the child's release from the secure facility" and not at the time of disposition.

**{¶25}** The state agrees that the trial court erred in classifying H.M. at the time of disposition in the case at bar.

**{¶26}** H.M.'s First, Second and Third Assignments of Error are sustained. H.M.'s classification as a tier II juvenile offender is vacated.

IV.

**{¶27}** In his Fourth Assignment of Error, H.M. challenges the manifest weight of the evidence that was presented at trial and which resulted in the juvenile court's adjudication finding him to be a delinquent child.

**STANDARD OF APPELLATE REVIEW.**

*A. Sufficiency of the Evidence.*

**{¶28}** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶29}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* Oh. Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis

added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

ISSUE FOR APPEAL

*Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."*

1. H.M. was adjudicated delinquent of two counts of Rape, violations of R.C. 2907.02(A)(2).

{¶30} R.C. 2907.02 provides,

(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

* * *

(C) A victim need not prove physical resistance to the offender in prosecutions under this section.

{¶31} "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another.

Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).

{¶32}  R.C. 2901.01(A)(1) defines "force,"

"Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.

{¶33}  In the case at bar, C.P. testified that in September 2016, H.M. forced his way into her bedroom.  H.M. grabs her arm, and took her to his room.  C.P. demonstrated for the court how H.M. grabbed her arm.  T., Sept. 22, 2017 at 25.  At H.M.'s insistence, C.P. put her mouth on H.M's penis and tried to give him a blowjob "for maybe like three seconds," but stopped because she felt like she was going to puke on him.

{¶34}  In December or January 2016, C.P. testified that H.M. came into C.P.'s room, grabbed her arm, walked her all the way to his bed and told her to lie down.  H.M. then told C.P. to pull down her pants.  C.P. testified,

I didn't - - didn't really see a reason to fight because again, stronger, not going to win.  At this point in time he had evolved the threats into killing me so I wasn't even going to say a word back to him about anything.

T., Sept. 22, 2017 at 32.

{¶35}   H.M. put his mouth on C.P.'s vagina.  H.M. admitted that he had threatened to kill C.P. in the past.  T., Sept. 22, 2017 at 242-243.  He further admitted to making threats to harm C.P. "multiple times."  T., Sept. 22, 2017 at 243.  The results of the polygraph tests that H.M. agreed to take indicate that he was being deceptive about the events that C.P. testified had occurred.

**{¶36}** "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar*, 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio-6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{¶37}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that H.M. had committed the crime of Rape by the use or threat of force on two occasions. We hold, therefore, that the state met its burden of production regarding each element of the crime of Rape by the use or threat of force and, accordingly, there was sufficient evidence to support each of H.M's adjudications.

2.  H.M. was adjudicated delinquent of Gross Sexual Imposition.

**{¶38}** R.C. 2907.05 provides,

 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

**{¶39}** "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the

person is a female, a breast, for the purpose of sexually arousing or gratifying either person".  R.C. 2907.01.

{¶40}  In the case at bar, C.P. testified that in September 2016, H.M. forced his way into her bedroom.  H.M. grabs her arm, and took her to his room.  Then, H.M. put C.P.'s hands on his penis.  H.M. admitted that he had threatened to kill C.P. in the past.  T., Sept. 22, 2017 at 242-243.  He further admitted to making threats to harm C.P. "multiple times."  T., Sept. 22, 2017 at 243.  The results of the polygraph tests that H.M. agreed to take indicate that he was being deceptive about the events that C.P. testified had occurred.

{¶41}  Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that H.M. had committed the crime of Gross Sexual Imposition by the use or threat of force. We hold, therefore, that the state met its burden of production regarding each element of the crime Gross Sexual Imposition by the use or threat of force and, accordingly, there was sufficient evidence to support H.M's adjudication.

*B. Manifest Weight of the Evidence.*

{¶42}  When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001);

*State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31.  Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility.  *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting 5 Ohio Jurisprudence 3d, Appellate Review*, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision.  *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶43}  Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins, supra,* 78 Ohio St.3d at 387,

*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL

*Whether the trier of fact court clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

**{¶44}** The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*, superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997).*

**{¶45}** In the case at bar, the judge heard the witnesses, viewed the evidence and heard H.M.'s attorney's arguments and explanations about H.M., and C.P. The judge was able to see for himself H.M. and C.P. subject to cross-examination. Thus, a rational basis exists in the record for the Judge's decision.

**{¶46}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in adjudicating H.M. delinquent of rape and gross sexual imposition.

**{¶47}** Based upon the foregoing and the entire record in this matter we find H.M.'s adjudication of delinquent for rape by force or threat of force and gross sexual imposition by force or threat of force is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided that matter. The judge heard the witnesses, evaluated the evidence, and was convinced of H.M.'s guilt.

**{¶48}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of rape by force and gross sexual imposition by force for which H.M. was adjudicated.

*C). Conclusion.*

**{¶49}** H.M.'s fourth assignment of error is overruled.

V.

{¶50} In his fifth assignment of error, H.M. argues that he received ineffective assistance of counsel because his trial counsel failed to object to the timing and mandatory nature of H.M.'s sexual offender classification.

{¶51} In light of our disposition of H.M.'s First, Second and Third Assignments of Error, in which we agree that the juvenile court erred in classifying H.M. during the dispositional phase of the proceedings, H.M. cannot demonstrate prejudice from counsel's performance.

{¶52} H.M.'s Fifth assignment of error is overruled.

{¶53} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed in part and reversed in part.  H.M.'s classification as a tier II juvenile offender is vacated and this case is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur